UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| ANTHONY REAUX, | CIVIL ACTION |
| Plaintiff | SECTION "P" |
| | NO. 3:09-CV-00407 |
| VERSUS | |
| CLAYTON SIBLEY, et al., | JUDGE JAMES T. TRIMBLE |
| Defendants | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Anthony Reaux ("Reaux") on June 29, 2009 (Doc. 1). The named defendants are Capt. Clayton Sibley, Sgt. Bryan Covington, Lt. James Edenfield, Sgt. Haver Durr, Major Joseph Turner, Lt. Darrel Aucoin, Capt. Brian Muse, Sgt. Marcus Hale, and Sgt. Russell Sanders, all employed at the Dixon Correctional Institute ("DCI") in Jackson, Louisiana, and James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections. Reaux alleges that, while he was incarcerated in DCI on September 14, 2008, defendants used excessive force against him (Doc. 1). Reaux contends that Russell, Hoyle, Covington, Durr, Edenfield, Aucoin, Sibley, Muse, and Turner used excessive force on him and beat him when he was in the infirmary, and that each allowed the others to beat him. Reaux further alleges that Secretary LeBlanc allowed the correctional officers to beat him and failed to properly train them (Doc. 1). For relief, Reaux asks for compensatory damages, punitive damages,

and injunctive relief banning the defendants who used excessive force from further employment with the Louisiana Department of Corrections.

Defendants answered the complaint (Doc. 21) and filed a motion for summary judgment with affidavits and documentary exhibits (Docs. 31, 32). Reaux has not contested defendants' motion. Defendants' motion was referred to the undersigned Magistrate Judge and is now before the court for disposition.

## Reaux's Factual Allegations

Reaux contends in his complaint that, on September 14, 2008, his urinalysis at DCI was positive for drugs and he was told he would be sent to administrative segregation in accordance with prison policy (Doc. 1). Reaux claimed there was a specific gravity problem and he had not taken drugs, so he asked for a higher ranking officer; Reaux contends two other inmates had specific gravity problems and were dry celled to be re-tested in a few hours (Doc. 1). Reaux alleges that Sibley and Covington restrained Reaux's hands, then Sibley struck Reaux in the back of the head, knocking him forward, and Sibley, Covington, Turner, and Durr began to beat, kick, and punch Reaux; Reaux's face was scratched by Durr's fingernails (Doc. 1). Reaux alleges that, when he fell to the floor, his legs were shackled (Doc. 1). Reaux contends he was then dragged to the front lobby of the infirmary, where Muse, Aucoin, Edenfield, Russell, and Hoyle joined the others in kicking

him until he was semi-conscious (Doc. 1). Reaux contends there were witnesses to the beating-nurses Andrea Tyler, Dana Klein (who is no longer employed at DCI), and Debbie Weber, Sgt. Armstrong, and inmate Larry Walker (Doc. 1). Major Worley entered and ordered the defendants to stop beating Reaux, told the medical staff to attend his wounds, and had inmate Porretta take photographs (Doc. 1).

Reaux contends he was then hospitalized at Lane Memorial Hospital and treated for fractured bone, a broken nose, cuts, and contusions (Doc. 1). Reaux was also tested again for drugs at Lane Memorial Hospital and his test was negative (Doc. 1).

Reaux contends he was subsequently charged with battery upon a correctional officer, although none of the officers' statements indicated any of them had been struck by Reaux and the infirmary security tapes were not produced to prove the battery occurred.

## Law and Analysis

### Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or

address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all

inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Excessive Force

Reaux claims the defendants used excessive force by beating him when he questioned the results of his drug screening urinalysis and asked for a higher ranking officer. Defendants claim Reaux became combative when they ordered him to submit to restraints, so they used the force necessary to enforce Reaux's obedience to the order to be restrained; prison policy is to place ain inmate in administrative segregation when he fails a drug screening. Defendants also claim that Reaux's injuries were de minimis.

To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent. Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the

5

relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton. The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. LeBlanc v. Foti, 487 F. Supp. 272, 275 (E.D.La. 1980), citing Johnson v.

Glick, 481 F.2d 1028 (2d Cir. 1973), cert. den., 414 U.S. 1033, 94 S.Ct. 462 (1973).

The law of the Fifth Circuit is that to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor. Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).

Physician's notes show that, on September 14, 2008, Reaux was catheterized in the DCI infirmary in order to obtain urine for a drug screen (Doc. 31, Ex. E, p. 73/164). An accident and incident report shows that, at about 4 p.m. on September 14, 2008, Reaux was involved in an altercation with security in the infirmary because he "refused to be restrained" (Doc. 31, Ex. E, p. 127/135). When Reaux refused orders to be restrained, he was "taken down" by security officers (Doc. 31, Ex. E, p. 127/164). According to the medical records and an affidavit by Dr. Tarver, Reaux sustained "small superficial scratches to head and face" and a knot above his

7

left eye, but did not have active bleeding and denied headache, blurred vision, nausea, and vomiting (Doc. 31, Ex. E-p. 127/135, Ex. F).

The medical records and Dr. Tarver's affidavit further show that two hours later, at 7:45 p.m. on September 14, 2008, Reaux was taken to the infirmary on a stretcher because he was shaking and having spastic activity; Reaux was found to be unresponsive to verbal or painful stimuli and had a blank stare (Doc. 31, Ex. E-p. 150/164, Ex. F). Security officers later reported they had found Reaux lying on the floor of his cell, shaking, and that he had vomited (Doc. 31, Ex. E, p. 149/164). Reaux's medical records again noted a small hematoma on his left forehead from his altercation with security (Doc. 31, Ex. E, p. 150/164). A catheterization was ordered to obtain urine for a repeat drug screen which was negative (Doc. 31, Ex. E, p. 150/164). The physician's notes and Dr. Tarver's affidavit further show that, at 8:30 p.m. on September 14, 2008, Reaux was sent to the hospital for evaluation and a CT scan of his head (Doc. 31, Ex. E-pp. 73&150/164, Ex. F).

At Lane Regional Medical Center, two CT scans of Reaux's head were negative for fracture and intracranial bleeding or injury, and Reaux was found to be neurologically stable (Doc. 31, Ex. E-pp. 118-119 & 142/164, Ex. F). Reaux returned from the hospital on September 16, 2008, with no distress, no seizure activity, and no

headaches (Doc. 31, Ex. E, p. 141/164).

According to medical progress notes dated September 18, 2008 (Doc. 31, Ex. E, p. 139/164), and a mental health after-incident report by Dr. Anthony Tarver and Jamie Devall, LCSW, CPM 2 (the Mental Health Director at DCI), on September 18, 2008, Reaux was again found shaking on the floor of his cell and taken to the infirmary (Doc. 31, Ex. E, pp. 108, 139/164). Reaux was reported to be awake, looking around, and repeatedly stating, "I'm okay, no more hits" (Doc. 31, Ex. E, p. 139/164). Reaux had a superficial abrasion with a scab and minimal edema on his left forehead (Doc. 31, Ex. E, p. 139/164). However, when some of the officers who were involved in the altercation with Reaux on September 14, 2008 entered the infirmary treatment room and Reaux became hysterical, yelled, "no, no, no!," and tried to get off the gurney to get away from the officers (Doc. 31, Ex. E, pp. 108, 116, 139-140/164). Reaux was then put on extreme suicide watch in order to physically restrain him; Reaux was speaking with a stutter and reported dreaming about being punched (Doc. 31, Ex. E, p. 108/164). The next morning, Reaux described the beating on September 14, 2008 to Dr. Soong, reported having bad dreams since then, was prescribed Paxil, and was downgraded to standard suicide watch (Doc. 31, Ex. E, pp. 108, 114/164).

Reaux claims emotional injury (post traumatic stress disorder) as well as physical injuries. Section 1997e prohibits recovery for

9

mental or emotional injury, suffered by a prisoner while in custody, without a prior showing of physical injury. See 42 U.S.C. § 1997e(e). To support a claim for mental or emotional suffering, as for a physical injury claim, the physical injury must be more than de minimis, but need not be significant. Siglar, 112 F.3d at 193, citing Hudson v. McMillian, 503 U.S. 1, 10, 112 S.Ct. 995, 1000 (1992). Also, Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005).

Although Reaux claims his injuries from the beating included scratches on his face and nose, fractured bones, a broken nose, and cuts and contusions covering his body (Doc. 1), Reaux's medical records indicate he sustained only small superficial scratches to his head and face and a knot above his left eye (Doc. 31, p. 127/135). There are no records of broken bones, and his medical record of September 18, 2008 noted only a healing abrasion on Reaux's forehead.

Reaux states in his complaint (Doc. 1) that, when he was told he had positive reading on the drug screen, he alleged there must be a specific gravity problem and asked for a higher ranking officer to be present, was refused, then persisted in asking again for a high ranking officer. According to an affidavit by Officer Brian Covington (Doc. 31, Ex. A) and defendants' statement of undisputed facts (Doc. 31), Reaux became resistant and combative, and ignored orders to allow officers to apply restraints. Major

Joseph Turner stated in his affidavit (Doc. 31, Ex. B) that he saw Reaux fighting with Sibley, Covington and Durr prior to being restrained and assisted them in subduing and restraining Reaux. Capt. Brian Muse And Sgt. Darrell Aucoin stated in the affidavits that, when they arrived in the infirmary on September 14, 2008, Reaux as already in restraints and lying on the floor; Muse had no contact with Reaux and Aucoin helped apply shackles to his legs and stand him up (Doc. 31, Exs. C & D). Reaux has not contested these affidavits or defendants' statement of undisputed facts.

Although Reaux contends in his complaint that his drug screen at the hospital was negative, that does not excuse his disobedience and fighting with the officers or otherwise indicate the officers were at fault for using force to make him comply with the orders.

It is clear from defendants' uncontested affidavits and statement of undisputed facts that Reaux initiated the physical confrontation, force was required to respond to Reaux's combative response to the officers' orders, and defendants applied a reasonable amount of force in a good faith effort to subdue Reaux and enforce the order to submit to being restrained. The evidently minor amount of force used in this case was not "of a sort repugnant to the conscience of mankind." Moreover, scratches and a small knot on the forehead are injuries that are so minor they are de minimis. Such injuries, under the circumstances, do not support Reaux's claims of excessive force and emotional injury.

Had Reaux been beaten and kicked into semi-consciousness, as described in Reaux's complaint, his injuries would have been more numerous and more serious. As already stated, there is no medical evidence that Reaux suffered the kind of injuries described in his complaint.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' uncontested motion for summary judgment should be granted.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' uncontested motion for summary judgment be GRANTED and that Reaux's action against all defendants be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of May, 2011.

> JAMES D. KIRK
> UNITED STATES MAGISTRATE JUDGE